VENTURA COASTKEEPER
WISHTOYO FOUNDATION
Jason Weiner (Bar No. 259264)
Email: jweiner.venturacoastkeeper@wishtoyo.org
3875-A Telegraph Rd. #423
Ventura, California 93003
Telephone: (805) 658-1120
Facsimile: (805) 258- 5107

Attorneys for Plaintiffs
VENTURA COASTKEEPER,
a program of the WISHTOYO FOUNDATION, and
WISHTOYO FOUNDATION

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENTURA COASTKEEPER, a program of THE WISHTOYO FOUNDATION, and THE WISHTOYO FOUNDATION, a non-profit corporation, <br><br> Plaintiffs, <br><br> v. <br><br> GENON ENERGY, INC.; GENON ASSET MANAGEMENT, LLC; GENON ENERGY MANAGEMENT, LLC; GENON POWER GENERATION ASSETS, LLC; GENON WEST, LP; GENON AMERICAS, INC.; GENON CALIFORNIA NORTH, LLC; GENON ENERGY SERVICES, LLC; GENON WEST GP, LLC, <br><br> Defendants. | Civil Case No.: CV 12- 9060 SJO(RZx) <br><br> **CONSENT DECREE** <br><br> **(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.*)** |

**WHEREAS,** the Wishtoyo Foundation is a 501(c)(3) non-profit public benefit grassroots corporation organized under the laws of the State of California.  The Wishtoyo Foundation's mission is to preserve, protect and restore Chumash culture, the culture and history of coastal communities, cultural resources, and the environment;

**WHEREAS,** Ventura Coastkeeper is a program of the Wishtoyo Foundation. Ventura Coastkeeper's mission is to protect, preserve, and restore the ecological integrity and water quality of Ventura County's inland water bodies, coastal waters and watersheds;

**WHEREAS,** Ventura Coastkeeper and Wishtoyo Foundation are referred to herein as "Coastkeeper" or "Plaintiffs";

**WHEREAS,** the Ormond Beach Generating Facility is located at 6635 South Edison Drive, Oxnard, California 93033 ("GenOn Facility" or "Facility");

**WHEREAS,** the GenOn Facility is owned and operated by GenOn West, LP (hereinafter "Defendant"), a wholly owned subsidiary of NRG Energy, Inc.;

**WHEREAS,** effective December 14, 2012, GenOn Energy, Inc. and NRG Energy, Inc., merged, and the combined entity retains the name NRG Energy, Inc.  As a result of the merger, all of the former wholly owned subsidiaries of GenOn Energy, Inc., including Defendant, are now wholly owned subsidiaries of NRG Energy, Inc., but there has been no change in the ownership or operation of the Facility, as Defendant was and continues to be the owner and operator of the Facility, notwithstanding the merger of the GenOn Energy, Inc. and NRG Energy, Inc.;

**WHEREAS**, on June 11, 2012, GenOn Energy, Inc. filed a Notice of Intent to comply with the Terms of the General Permit to Discharge Storm Water Associated with Industrial Activity (WQ Order No. 97-03-DWQ) ("Notice of Intent"), and on March 11, 2013 Defendant filed a corrected Notice of Intent with the State Water Resources Control Board naming Defendant as the Facility operator;

**WHEREAS,** the following entities do not conduct and have never conducted

activities at the Facility that are regulated by the California General Industrial Stormwater Permit: GenOn Energy, Inc.; GenOn Asset Management, LLC; GenOn Energy Management, LLC; GenOn Power Generation Assets, LLC; GenOn Americas, Inc.; GenOn California North, LLC; GenOn Energy Services, LLC; and GenOn West GP, LLC.  As such the listed entities in this paragraph do not discharge and have never discharged stormwater associated with industrial activity at the Facility;

**WHEREAS,** based on the representation of the entities listed in the paragraph above, Coastkeeper dismisses GenOn Energy, Inc.; GenOn Asset Management, LLC; GenOn Energy Management, LLC; GenOn Power Generation Assets, LLC; GenOn Americas, Inc.; GenOn California North, LLC; GenOn Energy Services, LLC; and GenOn West GP, LLC with prejudice for claims alleged in the Complaint and first amended Complaint through the Effective Date;

**WHEREAS**, on August 22, 2012, Coastkeeper issued a sixty (60) day notice letter ("Notice Letter") to Defendant, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board") and the Regional Water Quality Control Board ("Regional Board"), stating its intent to file suit for violations of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA").  The Notice Letter alleged violations of the Clean Water Act for Defendant's discharges of pollutants into receiving waters in violation of National Pollution Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ ("Storm Water Permit");

**WHEREAS**, on October 22, 2012, Coastkeeper filed a complaint against Defendant in the United States District Court, Central District of California (Case No. 2:12-cv-9060-SJO- (RZx)) entitled *Ventura Coastkeeper, et al. v. GenOn Energy, Inc., et al.* ("Complaint");

**WHEREAS**, on October 23, 2012, Coastkeeper issued a sixty (60) day

Supplemental Notice Letter ("Supplemental Notice Letter") to Defendant, EPA, the State Water Board and the Regional Board, stating its intent to file suit for additional violations of the Clean Water Act.  The Supplemental Notice Letter alleged violations of the Clean Water Act for Defendant's discharges of pollutants into receiving waters in violation of the Storm Water Permit.

**WHEREAS,** on January 29, 2013, Coastkeeper filed a first amended Complaint ("First Amended Complaint") in this action;

**WHEREAS**, Plaintiffs and Defendant (collectively referred to herein as the "Settling Parties" or "Parties") agree that it is in the Parties' mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint and First Amended Complaint without further proceedings;

**WHEREAS**, Defendant denies all allegations of the Complaint and First Amended Complaint;

**WHEREAS**, Defendant does not admit that the Consent Decree Standards are the proper Standards to be applied to the Facility's storm water discharges.  However, in the spirit of cooperation to settle this matter and to resolve the allegations set forth in the Complaint and First Amended Complaint without further proceedings, Defendant has compromised, and has agreed to enter into this Consent Decree and to comply with the provisions of this Consent Decree;

**WHEREAS**, the Settling Parties agree that the Consent Decree is an actual agreement that is the product of good faith, arms-length negotiations;

**WHEREAS**, it is the express purpose of the Parties entering into this Consent Decree to protect and enhance the water quality of the Ormond Beach Wetlands, Mugu Lagoon, and the Pacific Ocean, to further the objectives set forth in the Clean Water Act, and to resolve those issues alleged by the Plaintiffs in their Complaint and First Amended Complaint;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations;

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. §1365(c)(1), because the Facility at which the alleged violations took place is located within this District;

3.      The Complaint and First Amended Complaint states claims upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4.      Plaintiffs have standing to bring this action;

5.      The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.    OBJECTIVES**

6.      It is the express purpose of the Parties entering into this Consent Decree to further the objectives set forth in the Clean Water Act, 33 U.S.C. §§ 1251, *et seq.*, and to resolve those issues alleged by Coastkeeper in its Complaint and First Amended Complaint without further litigation.  In light of these objectives and as set forth fully below, Defendant agrees, *inter alia*, to comply with the terms and provisions of this Consent Decree, the Storm Water Permit, and all applicable provisions of the CWA.

**II.   EFFECTIVE DATE AND TERMINATION DATE**

7.      The term "Effective Date," as used in this Consent Decree, shall mean the

last day for the United States Department of Justice and the United States Environmental

Protection Agency (collectively "Federal Agencies") to comment on the Consent Decree,

i.e., the 45th day following the Federal Agencies' receipt of the Consent Decree, or the

date on which the Federal Agencies provide notice that they require no further review and

the Court enters the final Consent Decree, whichever occurs earlier.

8.     This Consent Decree shall terminate on its own terms on August 1, 2018,

provided, however, that if Defendant implements one of the stormwater management

options described below in clauses (a) or (b) in paragraph 10 the Consent Decree shall

terminate on August 1, 2016, unless there is an ongoing, unresolved dispute regarding

Defendant's compliance with this Consent Decree.  If there is an ongoing and unresolved

dispute about Defendant's compliance with the Consent Decree, the Consent Decree shall

extend until the dispute is resolved.

## III.   COMMITMENTS OF THE PARTIES

### A.   Initial Pollution Control Measures for Stormwater at the Facility Associated with Industrial Operations Discharged to the Beach, Inland or Coastal Waterways, or Inland or Coastal Wetlands ("Stormwater Discharges")[1]

9.     The stormwater pollution control measures required by this Consent Decree

and the Storm Water Permit shall be designed and operated to manage stormwater

generated from a 5-year, 24 hour rainfall event recorded by the National Oceanic and

Atmospheric Administration ("NOAA") Oxnard Airport Rainfall gauge ("Design

Standard"). [2]  For the purpose of this Consent Decree, properly documented Stormwater

Discharges, in connection with rainfall events in which precipitation exceeds the Design

Standard, are not subject to the requirements of this Consent Decree.

---

[1] Stormwater Discharges do not include stormwater that, consistent with the Facility's practice as of August 22, 2012, falls on the Facility's power block, flows to the floor drains, and is discharged to the Pacific Ocean as authorized and regulated under the Facility's Individual Permit.  This Consent Decree, and the Consent Decree Standards in Table 1 of this Consent Decree, do not apply to such discharges of stormwater to the Pacific Ocean under the Individual Permit.

[2] The 5-year, 24 hour rainfall event recorded by the NOAA Oxnard Airport Rainfall gage is 3.68 inches.

10.     Defendant has revised its Storm Water Pollution Prevention Plan ("SWPPP"), which is required by the Storm Water Permit.  The revised SWPPP is attached hereto as Exhibit 1.  Defendant shall implement the SWPPP, including the Best Management Practices ("BMPs") specified therein, as may be amended from time to time, including as required under paragraphs 14 and 15 of this Consent Decree.  This Consent Decree requires Defendant, by October 1, 2013, to implement BMPs designed to achieve the Consent Decree Standards listed in Table 1.  If, by November 1, 2013, Defendant either (a) retains on-site and/or discharges stormwater to the City of Oxnard sanitary sewer system such that there are no Stormwater Discharges except for during the portions of storms that exceed the Design Standard; or (b) installs an enhanced metal-removing media system[3] designed to achieve the Consent Decree Standards listed in Table 1 for Stormwater Discharges caused by storms within the Design Standard, then the Consent Decree shall terminate on August 1, 2016, as provided in Paragraph 8 above.  For Stormwater Discharges during storms within the Design Standard, if the BMPs set forth in this paragraph do not effectively prevent discharges or reduce contamination in stormwater discharged from the Facility in a manner sufficient to achieve the Consent Decree Standards listed in Table 1 below, Defendant shall develop and implement additional BMPs pursuant to Paragraph 14 of this Consent Decree to meet the Consent Decree Standards in Table 1 of this Consent Decree.

11.     Defendant will continue to use the existing onsite precipitation gage at the Facility, and will establish adequate procedures for accurately determining total rainfall at the Facility over 24 hours and adequate procedures for accurately logging the commencement and termination of a 24-hour precipitation event.

12.     Defendant shall not discharge stormwater or non-storm water that is not otherwise authorized by the Storm Water Permit or the Facility's NPDES permit no.

---

[3] Such "metal-removing system" shall achieve treatment equivalent to that which would be achieved by a Stormwater Systems treatment system, but Defendant reserves the right to choose a vendor for such system.

CA0001198 ("Individual Permit").

**B.    Reduction of Pollutants in Discharges**

13.    <u>Consent Decree Standards and Contaminant Reduction</u>.  Beginning with the 2013-2014 Wet Season (defined as October 1-May 31) ("Wet Season"), contaminants in Stormwater Discharges shall not exceed the standards in Table 1[4] ("Consent Decree Standards").  Beginning with the 2013-2014 Wet Season, if a contaminant in a Stormwater Discharge exceeds a Consent Decree Standard(s), Defendant shall implement an Action Plan pursuant to paragraph 14 of this Consent Decree sufficient to meet the applicable Consent Decree Standard(s).

**Table 1**

| **Contaminant** | **Consent Decree Standard**<br>(All but pH expressed as mg/L; hardness dependent limits in bold) |
|---|---|
| Total Suspended Solids | 100 |
| Total Recoverable Copper | **0.0123** |
| Dissolved Copper | **0.013** |
| Total Recoverable Lead | **0.069** |
| Dissolved Lead | **0.065** |
| Total Recoverable Zinc | **0.110** |
| Dissolved Zinc | **0.120** |
| Oil and grease | 15 |
| Total Recoverable Aluminum | 0.750 |
| Total Arsenic | **0.1685** |
| Dissolved Cadmium | **0.0043** |
| Total Recoverable Iron | 1.0 |
| Total Recoverable Mercury | 0.0024 |
| Dissolved Nickel | **0.470** |

---

[4]  The total recoverable Consent Decree Standards  in Table 1 are derived from U.S. EPA Benchmarks included in the NPDES Storm Water Multi-Sector General Permit for Industrial Activities ("Multi-Sector Permit"), 65 Federal Register 64839, 64766 (2000); *see also*, Multi-Sector Permit (2008). The dissolved Consent Decree Standards in Table 1 are derived from the Criteria for Priority Toxic Pollutants in the State of California, 40 C.F.R. § 131.38 ("CTR"). Several of the Consent Decree Standards are hardness-dependent.  The total recoverable Consent Decree Standards are expressed in Table 1 using an assumed hardness range of 75-100 mg/l $CaCO_3$. The dissolved Consent Decree Standards are expressed in Table 1 using an assumed hardness range of 75-100 mg/l $CaCO_3$. Defendant shall adjust the total recoverable Consent Decree Standards using the methods provided in Appendix J of the 2008 EPA MSGP (Multi-Sector General Permit), and shall adjust the dissolved Consent Decree Standards using the methods provided in the CTR.

| **Contaminant** | **Consent Decree Standard**<br>**(All but pH expressed as mg/L; hardness dependent limits in bold)** |
|---|---|
| Dissolved Silver | **0.0034** |
| Chemical Oxygen Demand | 120 |
| Biochemical Oxygen Demand | 30 |
| pH | 6.5 to 8.5 units |

14. **Action Plans for Table 1 Exceedances.** Beginning with the 2013-2014 Wet Season, Defendant shall submit a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") if sampling conducted pursuant to paragraph 16 of this Consent Decree demonstrates that the concentration of any Table 1 contaminant in any Stormwater Discharge exceeds the applicable Consent Decree Standard.  Defendant shall submit an Action Plan, if required, no later than July 1 following the Wet Season in which the Table 1 Consent Decree Standard was exceeded.  Action Plans are not required for any Stormwater Discharge that is the result of precipitation in excess of the Design Standard.

a. <u>Action Plan Requirements</u>.  Action Plans shall include at a minimum: (1) the identification of the pollutant(s) discharged in excess of the Consent Decree Standard(s), (2) an assessment of the source of each pollutant exceedance, (3) the identification of additional BMPs, including structural BMPs and/or systems/devices to treat stormwater prior to discharge from the Facility, with demonstrated effectiveness in meeting the applicable Consent Decree Standard(s), and that will be implemented to reduce and/or eliminate the discharge of pollutants from the Facility so that contaminants in Stormwater Discharges do not exceed the applicable Consent Decree Standard(s) ("Action Plan BMPs"), and (4) time schedules for implementation of the Action Plan BMPs.  The time schedule(s) for implementation shall ensure that all Action Plan BMPs are implemented no later than October 1 (prior to the next Wet Season).

b. <u>Action Plan Review</u>.  Coastkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments.  Within thirty (30)

days from the date Coastkeeper comments on Defendant's Action Plan, Defendant shall provide Coastkeeper with a written explanation if Defendant refuses to develop and/or implement any of Coastkeeper's recommended additional BMPs and or refuses to accept and incorporate any of Coastkeeper's comments.

c.   Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

d.   Defendant shall revise its SWPPP to include the Action Plan BMPs by October 1 (prior to the next Wet Season).

e.   Defendant shall have until October 1 (prior to the next Wet Season) to implement any Action Plan BMPs agreed upon by Defendant and Coastkeeper.

f.   If any Action Plan BMP(s) require any agency approval, then Defendant shall contact Coastkeeper to request an extension of the deadline, if necessary, to implement the Action Plan BMP(s) requiring agency approval.  Coastkeeper's consent to Defendant's requested extension shall not be unreasonably withheld.

C. **Storm Water Pollution Prevention Plan**

15.   <u>Additional Revisions to SWPPP</u>.  Defendant shall revise the SWPPP as necessary and appropriate, including but not limited to: (a) each time additional BMPs are developed to achieve compliance with the terms of this Consent Decree and/or the Storm Water Permit; (b) as required by the Storm Water Permit, as it may be amended. Defendant shall submit a revised SWPPP to Coastkeeper for review and comment as soon as it is completed and Coastkeeper may provide comments on the revised SWPPP within thirty (30) days of receipt. Defendant will consider and respond to Coastkeeper's comments within thirty (30) days of receipt.  Any disputes as to the adequacy of any revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

C.   **Sampling and Monitoring at the GenOn Facility**

16.   <u>Sample Analysis and Sample Frequency</u>.  Defendant shall collect and analyze stormwater samples as follows:

    a.   Defendant shall collect samples from each Stormwater Discharge location and from at least the first four (4) Stormwater Discharge events per Wet Season.  (For the 2012-2013 Wet Season, Defendant shall collect samples from each Stormwater Discharge location during the first two Stormwater Discharge events after the Effective Date.)  For each storm event that results in a discharge from the Facility, if the storm event commences between 7:00 a.m. and 6:00 p.m. Defendant must take samples during the first two hours of discharge. If stormwater is stored onsite prior to discharge, and released outside of 7:00 a.m. to 6:00 p.m., Defendant must take samples during the first two hours of this discharge.  Any failure to sample a discharge from each discharge location at the Facility until four (4) storm events per Wet Season have been sampled shall be documented and submitted to Plaintiffs within five (5) days of the date a sample could have been collected but was not. The Defendant shall analyze the samples for the constituents identified in Table 1.

    b.   Defendant shall use a state certified laboratory, that adheres to the EPA methods for total and dissolved metals analysis, to conduct all sample analysis pursuant to this Consent Decree.  The Defendant shall select laboratories and analytical limits such that, at a minimum, the method detection limits are below the Consent Decree Standards in Table 1.

**D.   Compliance Monitoring and Reporting**

17.   <u>Annual Site Visits</u>.  A Coastkeeper representative, and if Coastkeeper desires up to two additional representatives or consultants (including an attorney), may conduct one site visit ("Site Visit") of the Facility's stormwater program each year that this Consent Decree is in effect.  Site Visits shall occur during normal business hours

(7:00 a.m. to 3:00 p.m., Monday through Friday, excluding holidays). Coastkeeper shall provide Defendant with as much notice as possible, but at a minimum shall provide at least thirty-six (36) hours' notice prior to a Site Visit during wet weather, and five (5) days' notice prior to a Site Visit during dry weather. Notice will be provided by telephone and electronic mail during normal business hours; effective notice for purposes of this paragraph requires confirmation from Defendant, which may not be unreasonably withheld, at least thirty-six (36) hours before the Site Visit, by e-mail or telephone, that it is aware that Coastkeeper will be conducting a Site Visit. During the Site Visit, Defendant shall allow Coastkeeper and/or its representatives access to the Facility's SWPPP, the Monitoring and Reporting Plan, monitoring records related to Stormwater Discharges, and to all monitoring reports and data for the Facility related to Stormwater Discharges. During a Site Visit in which Defendant samples Stormwater Discharges, Coastkeeper and/or its representatives may observe such sampling. No photography or video recording will be permitted during Site Visits.

18. <u>Coastkeeper's Compliance Monitoring</u>. Defendant agrees to compensate Plaintiff for time to be spent monitoring Defendants' compliance with the Consent Decree. To this end, Defendant shall pay Coastkeeper the sum of Fifteen Thousand Dollars ($15,000) within thirty (30) days of the Effective Date for Coastkeeper's efforts to monitor Defendant's compliance with this Consent Decree. Anytime Defendant is required to submit an Action Plan to Coastkeeper pursuant to paragraph 14 of this Consent Decree, Defendant shall make a compliance monitoring payment in the amount of Twelve Thousand Dollars ($12,000) upon submission of the Action Plan. All payments required under this paragraph shall be submitted and made payable to "Ventura Coastkeeper," addressed to Ventura Coastkeeper, 3875-A Telegraph Road #423, Ventura, California 93003, and sent via courier or overnight delivery.

19. <u>Data Reporting</u>. During the life of this Consent Decree, Defendant shall provide Coastkeeper with analytical data from sampling conducted pursuant to this

Consent Decree within 30 days of Defendant receiving the analytical results from the laboratory; Defendant shall also e-mail Coastkeeper when it submits monitoring data, inspection reports, and laboratory analyses to the State Board pursuant to the Storm Water Permit.

20.   Document Provision.  During the life of this Consent Decree, Defendant shall copy Coastkeeper on all formal, written communications (which excludes e-mails) Defendant submits to the Regional Board or the State Board regarding the Facility's compliance with the Storm Water Permit.  Such communications shall be provided to Coastkeeper concurrently as they are sent to the Regional Board or State Board. Defendant shall provide to Coastkeeper any formal, written communications (which excludes e-mails) it receives from the Regional Board or State Board regarding the Facility's compliance with the Storm Water Permit within ten (10) business days of receipt by Defendant.

**E.   Environmental Project, Reimbursement of Litigation Fees and Costs**

21.   Environmental Project. Defendant agrees to make an initial payment of Sixty Five Thousand Dollars ($65,000) within thirty (30) days of the Effective Date to the Rose Foundation for Communities and the Environment for a project related to water quality designed to analyze, reduce, prevent, or otherwise mitigate the ecological effects of stormwater and/or non-stormwater discharges to the Ormond Beach Wetlands, Mugu Lagoon, or the Mugu Lagoon Area of Special Biological Significance ("ASBS").  The payment shall be mailed via certified mail or overnight delivery to the attention of Tim Little at 6008 College Avenue Suite 10, Oakland, California 94618-1382.  Defendant shall provide Coastkeeper with a copy of such payment. Further, if Defendant elects not to implement one of the stormwater management options described above in clauses (a) or (b) in paragraph 10 by November 1, 2013, then Defendant shall make a supplemental payment of Forty Thousand Dollars ($40,000) to the Rose Foundation for Communities

and the Environment, by December 1, 2013, on the same terms described above.

22.     <u>Reimbursement of Plaintiffs' Fees and Costs</u>. Defendant agrees to partially reimburse Plaintiffs for their investigation fees and costs, consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter in an amount totaling Seventy-Nine Thousand Dollars ($79,000).  All such payments shall be made within thirty (30) days of the Effective Date and shall be made payable to "Ventura Coastkeeper," addressed to Ventura Coastkeeper, 3875-A Telegraph Road #423, Ventura, CA 93003, and sent via certified mail or overnight delivery.

**F.     Agency Review of Consent Decree**

23.     Plaintiffs shall submit this Consent Decree to the Federal Agencies, within three (3) days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by both agencies, as evidenced by written acknowledgement of receipt by the agencies or the certified return receipts, copies of which shall be provided to Defendant.  In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

**IV.    DISPUTE RESOLUTION**

24.     This Court shall retain jurisdiction over this matter for the purposes of adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree.  The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

25.     <u>Meet and Confer</u>.  A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Parties in writing of the matter(s) in dispute and of the party's proposal to resolve the dispute under this Section. The Parties shall then meet and confer in an attempt to resolve the dispute no later than fourteen (14) calendar days from the date of the notice.

26.     If the Parties cannot resolve a dispute by the end of the meet and confer process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California.  The Parties shall jointly apply to the Court for an expedited hearing schedule on the motion.

27.     If Coastkeeper initiates a motion or proceeding before the Court to enforce the terms and conditions of this Consent Decree, Coastkeeper shall be entitled to recover reasonable fees and costs incurred to enforce the terms of this Consent Decree consistent with the provisions of Sections 505 and 309 of the CWA, 33 U.S.C. §§ 1365, 1319.

## V.     MUTUAL GENERAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

28.     The Parties hereby release each other and each of their current, former, and future predecessors-in-interest, successors in interest, parents, ultimate parent companies, directly and indirectly affiliated, joint ventures, partnerships, related companies, subsidiaries and/or affiliates, together with all their current and former respective officers, employees, directors, partners, members, Board of Directors, shareholders, officials, agents, accountants, attorneys, insurance carriers and reinsurers, sureties, representatives, independent contractors, consultants, advisors, and all successors, assigns and persons/entities in privity with any one or more of such persons/entities, of and from any and all demands, actions, causes of action, suits, obligations, assessments, damages, liabilities, investigation costs, remediation costs, restoration costs, other costs, losses, or expenses (including attorneys' fees and expert witness fees) of any kind or nature whatsoever (whether legal or equitable, past, present or future, ascertained or unascertained, known or unknown, suspected or unsuspected) that have been or could have been asserted up through the Effective Date, including, but not limited to, claims that were presented or that could have been presented in the Complaint.  However, this general release specifically excludes the pending case *GenOn West, LP v. State Water*

*Resources Control Board* (Super. Ct. Sacramento County, Oct. 27, 2010, No. 2010-80000701), and excludes claims for the Defendant's failure to comply with this Consent Decree.

29.    With respect to, and subject to the terms of, the general release contained in paragraph 28 above, the Parties expressly waive any rights or benefits available under section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

30.    Except as stated in paragraphs 28 and 29, this Consent Decree does not limit Plaintiffs' right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, state, local, or federal agency, or any other judicial or administrative body on any other matter relating to Defendant, including, without limitation, the right to advocate for stricter effluent limits or monitoring requirements in the Individual NPDES Permit and in the Storm Water Permit when they are reissued, amended, or renewed.

31.    Plaintiffs will give Defendant at least 15 days' written notice before making any formal or informal complaint related to or under the Clean Water Act (including without limitation any notices of intent to sue, lawsuits, or requests for agency action or enforcement) concerning the Facility or the Mandalay Generating Station to any administrative body, court, or government entity.  If either Party desires to issue a press release regarding this Consent Decree or issues related to the Complaint, the First Amended Complaint, the Notice Letter, or the Supplemental Notice Letter, the Parties shall meet and confer to develop mutually agreeable language for a press release.

32.    Neither the Consent Decree nor any payment pursuant to the Consent Decree

1  shall constitute or be construed as a finding, adjudication, or acknowledgement of any

2  fact, law or liability, nor shall it be construed as an admission of violation of any law,

3  rule, or regulation.  Defendant maintains and reserves all defenses it may have to any

4  alleged violations that may be raised in the future.

5      33.   <u>Force Majeure</u>. Defendant shall notify Coastkeeper pursuant to the terms of

6  this paragraph, when timely implementation of the requirements set forth in this Consent

7  Decree becomes impossible, despite the timely good-faith efforts of Defendant, due to

8  circumstances beyond the reasonable control of Defendant or its agents, and which could

9  not have been reasonably foreseen and prevented by the exercise of due diligence by

10 Defendant.  In no circumstances shall a claim of inability to pay be considered Force

11 Majeure.

12      a.  If Defendant claims impossibility, it shall notify Coastkeeper in writing

13 within twenty-one (21) days of the date that Defendant first knew of the event or

14 circumstance that caused or would cause a violation of this Consent Decree.  The notice

15 shall describe the reason for the nonperformance and specifically refer to this Section.  It

16 shall describe the anticipated length of time the delay may persist, the cause or causes of

17 the delay, the measures taken or to be taken by Defendant to prevent or minimize the

18 delay, the schedule by which the measures will be implemented, and the anticipated date

19 of compliance. Defendant shall adopt all reasonable measures to avoid and minimize

20 such delays.

21      b.  The Parties shall meet and confer in good-faith concerning the non-

22 performance and, where the Parties concur that performance was or is impossible, despite

23 the timely good faith efforts of Defendant, due to circumstances beyond the control of

24 Defendant that could not have been reasonably foreseen and prevented by the exercise of

25 due diligence by Defendant, new deadlines shall be established.

26      c.  If Coastkeeper disagrees with Defendant's notice, or in the event that the

27 Parties cannot timely agree on the terms of new performance deadlines or requirements,

28

either party shall have the right to invoke the Dispute Resolution Procedure pursuant to Section IV.  In such proceeding, Defendant shall bear the burden of proving that any delay in performance of any requirement of this Consent Decree was caused or will be caused by force majeure and the extent of any delay attributable to such circumstances.

## VI.    MISCELLANEOUS PROVISIONS

34.    The Parties understand that Defendant is evaluating the possibility of discharging stormwater that is subject to this Consent Decree to the Pacific Ocean pursuant to its Individual Permit.  This Consent Decree does not limit or prohibit Defendant from pursuing this approach; provided, however, that Defendant shall only seek authorization to redirect Stormwater Discharges to the Pacific Ocean in the context of a formal amendment or renewal of the Facility's Individual Permit, in which amendment, reissuance, or renewal process Coastkeeper would have all of its rights under applicable Federal and state public notice and comment requirements, and law.

35.    Construction.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

36.    Choice of Law.  The laws of the United States shall govern this Consent Decree.

37.    Severability.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

38.    Correspondence.  All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by regular mail or electronic mail as follows:

If to Plaintiffs:

Jason Weiner
Staff Attorney

Wishtoyo Foundation / Ventura Coastkeeper
3875-A Telegraph Road #423
Ventura, CA 93003
jweiner.venturacoastkeeper@wishtoyo.org

If to Defendant:

Peter Landreth
Assistant Regional General Counsel – West Region
NRG Energy
696 W. 10th Street
P.O.Box 192
Pittsburg, CA  94565
Peter.Landreth@nrgenergy.com

With copies to:

Daniel Brunton
Latham & Watkins LLP
600 W. Broadway, Suite 1800
San Diego, CA 92101
daniel.brunton@lw.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

39.     Effect of Consent Decree.  Plaintiffs do not, by its consent to this Consent Decree, warrant or aver in any manner that Defendant's compliance with this Consent Decree will constitute or result in compliance with any federal or state law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Defendant to comply with all federal, state, and local laws and regulations governing any activity required by this Consent Decree.

40.     Counterparts.  This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

41.     <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

42.     <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

43.     <u>Integration Clause</u>.  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

44.     <u>Authority</u>.  The undersigned representatives for Plaintiffs and Defendant each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

45.     The provisions of this Consent Decree apply to and bind the Parties, including their respective successors in interest by way of merger, acquisition, or otherwise, and their permitted assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

46.     There are no intended third-party beneficiaries to this Consent Decree, and only the Parties and their heirs, assigns, representatives, and successors may enforce this Consent Decree.

47.     The Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree, Defendant does not admit liability for any purpose as to any allegation or matter arising out of this Action.

1        The undersigned representatives for Coastkeeper and Defendant each certify that

2   he/she is fully authorized by the party whom he/she represents to enter into the terms

3   and conditions of this Consent Decree and that this Consent Decree binds that party.

4        IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as

5   of the date first set forth above.

6   **IT IS SO ORDERED:**

7       May 8, 2013.
    Date:_____

8   _____
    Honorable

9   DISTRICT COURT JUDGE
    CENTRAL DISTRICT OF CALIFORNIA

11  APPROVED AS TO CONTENT

12  VENTURA COASTKEEPER AND
13  WISHTOYO FOUNDATION

15  Dated:      April ___, 2013      _____

16  Mati Waiya, Executive Director
    Ventura Coastkeeper and
17  Wishtoyo Foundation

19  GENON WEST, LP

21
22  Dated:      April ___, 2013      _____

22  John Chillemi, President
23  GenOn West, LP

APPROVED AS TO FORM

LATHAM & WATKINS LLP

Dated:        April 3, 2013          /s/ Daniel Brunton
                                     Daniel Brunton
                                     Attorney for Defendant

                                     WISHTOYO FOUNDATION AND
                                     VENTURA COASTKEEPER
Dated:        April 3, 2013          /s/ Jason Weiner
                                     Jason Weiner
                                     Staff Attorney for Plaintiffs

1

<u>Exhibit 1</u>

2

Revised SWPPP

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28